UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

BLACKMAN & CO., INC.,

        Plaintiff,

    v.

GE BUSINESS FINANCIAL
SERVICES, INC.
formerly known as
MERRILL LYNCH BUSINESS
FINANCIAL SERVICES, INC.,
RIVERWINDS URBAN RENEWAL,
LLC., et al.,

        Defendants.

Civil No. 15-7274 (NLH/JS)

**OPINION**

---

**APPEARANCES:**

MARC SHORTINO
GARTNER + BLOOM, P.C.
675 MORRIS AVENUE
SPRINGFIELD, NEW JERSEY 07078

JONATHAN A. CASS
EDWARD SEGLIAS
MATTHEW GIOFFRE
COHEN SEGLIAS PALLAS
GREENHALL & FURMAN PC
30 S. 17TH STREET, 19TH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
    On behalf of plaintiff Blackman & Co., Inc.

MICHAEL C. FALK
ROBERT E. WARRING
REED SMITH LLP
PRINCETON FORRESTAL VILLAGE
136 MAIN STREET, SUITE 250
PRINCETON, NEW JERSEY 08540

```
SAMUEL J. PARK
REED SMITH LLP
355 SOUTH GRAND AVENUE, SUITE 2900
LOS ANGELES, CA 90071
     On behalf of defendants GE Business Financial Services,
     Inc. and Riverwinds Urban Renewal, LLC
```

**HILLMAN, District Judge**

Presently before the Court is the motion of plaintiff to remand the matter to state court.[1] For the reasons expressed below, plaintiff's motion will be denied.

## BACKGROUND

On October 2, 2015, defendants GE Business Financial Services, Inc. and Riverwinds Urban Renewal, LLC ("GEBFS/Riverwinds") removed the complaint of plaintiff, Blackman & Co., Inc., from New Jersey Superior Court to this Court pursuant to 28 U.S.C. § 1441(a) on the basis of diversity of citizenship under 28 U.S.C. § 1332(a)(1). Blackman is a New Jersey corporation with its principal place of business in New Jersey. GEBFS is a Delaware corporation with its principal place of business in Illinois. Riverwinds, as a limited

---

[1] The Court granted plaintiff's request that the Court defer ruling on defendants' motions to dismiss or sever until after the Court resolved plaintiff's motion to remand. The Court directed that plaintiff was not required to file its opposition to defendants' motion until fourteen days after the resolution of the motion to remand, if necessary. Because the Court will deny plaintiff's motion to remand, plaintiff is directed to file its oppositions to the motions to dismiss or sever within fourteen days.

2

liability corporation, is a citizen of the state of its sole member, GEBFS, and it is therefore a citizen of Delaware and Illinois.  GEBFS/Riverwinds removed Blackman's action on the premise that the New Jersey citizenship of the other defendants must be disregarded because they were not properly joined.

Blackman's complaint alleges that Grove Street Realty Urban Renewal, LLC ("Grove Street") was the Owner and General Contractor of a construction project known as Riverwinds Cove Apartments, located at 370 Grove Street, West Deptford, New Jersey (the "Property").  A four-story building comprised of age-restricted housing designed by Feinberg & Associates (the "Project") was to be constructed on the Property.  Thomas Hedenberg was the Managing Member of Grove Street at the time of construction of the Project.

Grove Street financed the project through a construction mortgage with Merrill Lynch for the total loan amount of $32,258,529.  Grove Street was to act as its own general contractor for the project.  However, because Hedenberg and his partner were borrowers on the construction mortgage on behalf of Grove Street, Merrill Lynch required him to set up a single purpose entity, which became known as Rivercove Development LLC ("Rivercove"), to act as general contractor for the building project.

3

Merrill Lynch required a Payment and Performance bond in the principal amount ($23,605,681) covering the cost of the building construction only, with the primary beneficiary being the owner, Grove Street.  The principal funds did not include site improvements or soft costs.  Merrill Lynch was required to be named as a dual obligee on the bond.

Because of these bonding requirements, it was necessary that Grove Street retain Blackman for the sole purpose of obtaining the bonding for the project, which was to be paid by Grove Street.  Grove Street retained Blackman by way of a contract dated September 21, 2007, solely for the purpose of obtaining the Payment and Performance bond. ("Blackman Contract").  Incorporated within the Blackman Contract was General Conditions form A201- 1997, which included sections relating to dispute resolutions.  Then, in accordance with the direction and requirements of Merrill Lynch given to Hedenberg, Blackman subcontracted the entire general contract back to Grove Street by way of a contract dated October 11, 2007, through the newly created single purpose entity, Rivercove, for which Hedenberg was also Managing Member.  As a result, Rivercove became the general contractor for the project.

By way of contract dated October 11, 2007, Rivercove then retained Blackman to handle the construction administration

4

only, namely the review of requisitions for payment from the various subcontractors who performed work on the building. Rivercove retained all of the subcontractors who performed construction work on the project. Blackman did not retain any subcontractors.

On or about October 16, 2007, Hedenberg, on behalf of Grove Street, executed an "Assignment of Project Documents" to Merrill Lynch as a security interest on the construction loan. At some point in time GE Business acquired Merrill Lynch.[2] Grove Street defaulted on the construction loan, and GE Business instituted foreclosure proceedings against Grove Street and the subject property.

Prior to the Sheriff's sale on the property, GE Business set up a single asset entity to acquire the property - defendant, Riverwinds - and assigned both the mortgage and judgment to Riverwinds on or about March 5, 2012. At the Sheriff's sale, which took place on March 20, 2012, Riverwinds bid on the property to protect their foreclosure judgment amount, and acquired the Property. Riverwinds was not the

---

[2] GEBFS/Riverwinds clarifies that at the inception of the loan, GEBFS was then known as Merrill Lynch Business Financial Services. On March 25, 2008, Merrill Lynch Business Financial Services officially changed its name to GE Business Financial Services.

construction lender for the project. Blackman has not entered into any construction contracts with GE Business, Merrill Lynch, or Riverwinds.

As a result of the various assignments of the construction documents, on or about May 29, 2015, Defendants, GE Business and Riverwinds, filed a $4,000,000 Demand for Arbitration with the American Arbitration Association against Blackman for claims arising solely out of the Blackman Contract with Grove Street dated September 21, 2007. (Compl. ¶¶ 15-34.)

Based on these allegations, Blackman has asserted three counts against GEBFS/Riverwinds, Grove Street, and the subcontractors on the project. Blackman has summarized the "nature of the action" as follows:

> A Demand for Arbitration has been filed against Blackman by GE Business Financial Services, Inc., f/k/a Merrill Lynch Business Financial Services, Inc., Riverwinds Urban Renewal, LLC (collectively "GE/Riverwinds") relating to a contract Blackman entered into with Grove Street. The Arbitration arises out of allegations of construction defects relating to the construction of the premises known as Riverwinds Cove Apartments, located at 370 Grove Street, West Deptford, New Jersey (the "Property"). Blackman seeks (1) to dismiss the Demand for Arbitration and/or remove the matter from Arbitration, and (2) assert causes of action in contribution, contractual and common law indemnification against those contractors who performed the construction work.

(Compl. ¶ 14.)

Despite the lack of diversity of citizenship between

6

Blackman and all of the other defendants except for GEBFS/Riverwinds, GEBFS/Riverwinds removed Blackman's complaint to this Court pursuant to 28 U.S.C. § 1332.  GEBFS/Riverwinds contends in its notice of removal and in its opposition to Blackman's motion to remand that the non-diverse defendants were fraudulently joined and should not be considered for purposes of establishing diversity jurisdiction.  Blackman contests GEBFS/Riverwinds' position, and argues that its case was improperly removed from New Jersey state court where the matter belongs.

## DISCUSSION

In its notice of removal and in its opposition to Blackman's motion to remand, GEBFS/Riverwinds argues that the primary dispute in Blackman's complaint is whether the arbitration provision in the contract between Blackman and Grove Street should be enforced.  GEBFS/Riverwinds argues that Blackman's contribution and indemnification claims against Grove Street and the subcontractor defendants have absolutely no connection in fact or in law with Blackman's claim against GEBFS/Riverwinds, and that those other defendants were fraudulently joined to defeat removal to this Court.[3]

---

[3] GEBFS/Riverwinds alternatively argues that the other defendants should be realigned on the same side of the "v" as Blackman.

In support of its argument, GEBFS/Riverwinds relates the procedural history preceding the instant matter. On May 29, 2015, GEBFS/Riverwinds filed a Demand for Arbitration against Blackman with the American Arbitration Association. On June 29, 2015, Blackman filed a complaint against only GEBFS/Riverwinds in the Superior Court of New Jersey and asserted a single claim against GEBFS/Riverwinds seeking the dismissal of the case from arbitration. On August 5, 2015, GEBFS/Riverwinds removed that action to this Vicinage based on diversity of citizenship jurisdiction. (See Civil Action No. 15-6026 JEI/JS.) Contemporaneous with the notice of removal, GEBFS/Riverwinds filed a motion to dismiss the complaint or compel arbitration.

---

Position realignment of the defendants does not make sense in this case, however, particularly because the positions between Blackman and the subcontractors are the epitome of adverse. That Grove Street or the subcontractors cannot take a position – one that is either favorable or adverse – on the enforceability of the arbitration provision does not support their realignment as plaintiffs. See Employers Ins. of Wausau v. Crown Cork & Seal Co., 942 F.2d 862, 864 (3d Cir. 1991) (quoting City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, (1941)) ("'Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty . . . to look beyond the pleadings and arrange the parties according to their sides in the dispute. . . . Whether the necessary collision of interests . . . exists . . . must be ascertained from the principal purpose of the suit . . . and the primary and controlling matter in dispute . . . .'").

8

Prior to the resolution of that motion, on September 4, 2015, Blackman filed a notice of voluntary dismissal of its action pending in this courthouse and filed a new complaint in state court against GEBFS/Riverwinds, Grove Street, and the subcontractor defendants asserting two additional counts. This second action is now the instant case before this Court.

In addition to the argument that Blackman's claim to remove the GEBFS/Riverwinds' contract dispute from arbitration raises completely separate factual and legal issues from Blackman's indemnification claims against Grove Street and the subcontractors, GEBFS/Riverwinds argues that Blackman's actions in voluntarily dismissing its first suit and then adding non-diverse parties to its second suit clearly supports the argument that those defendants were fraudulently joined to defeat removal to federal court.

Blackman refutes GEBFS/Riverwinds's characterization of its claims and actions. Blackman argues that the arbitration provision is incorporated into all the contracts between all the parties, and that Grove Street and the subcontractors are indispensable to an action that involves the interpretation of that provision. Blackman argues that it is logical and sensible to include all relevant parties to the dispute over the construction project, and that it has not engaged in any

9

"egregious" conduct that warrants the application of the fraudulent joinder analysis.

The law governing the removal of a case from state court based on diversity jurisdiction where the case contains claims against non-diverse parties is well settled. The removal statute provides, "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand," and "a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted). Moreover, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a heavy burden of persuasion. Id. (citation omitted).

Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint

10

judgment." Id. (citation omitted). A district court must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. Id. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Id. (citation omitted).

This Court must therefore look to Blackman's claims in order to assess GEBFS/Riverwinds' fraudulent joinder argument. In its first count for "Removal of the Case from Arbitration," Blackman alleges, in part:

> 55. Since GE Business and/or Riverwinds are not proper assignees of the rights and obligations of the Blackman Contract, neither of these parties can invoke the arbitration clause of the Blackman Contract to require arbitration of their claims against Blackman.
>
> 56. Based upon the foregoing, the Demand for Arbitration filed against Blackman is improper, untimely, procedurally defective, inapplicable, invalid and Blackman never consented to Arbitration and/or waived its right to seek relief in the Court and/or its right to a trial by jury for this post-construction, alleged construction defect dispute.
>
> WHEREFORE, Plaintiff demands dismissal of the GE/Riverwinds' Demand for Arbitration dated May 29, 2015, together with court costs, attorneys' fees, or such other relief as the Court deems just.

(Compl. at 10.)

Counts Two and Three asserted against Grove Street and the subcontractors provide, in relevant part:

> 58.  While denying all liability to GE/Riverwinds in the Demand for Arbitration, pursuant to R. 4:7-5(b) Blackman demands contribution from Defendants under the Joint Tortfeasor's Contribution Act N.J.S.A. 2A:53A-l against Grove Street Realty Urban Renewal, LLC, Rivercove Development LLC, Painting By Pearce, Inc., EJT Custom Xteriors, LLC, R. Deacon & Sons, Inc., Carpenter Contracting Associates, LLC, Burns & Associates, Inc., and LaRosa Building Contractors, LLC, and ABC Corp. (1-X) said names being fictitious entities.

> 60.  While denying all liability to GE/Riverwinds, if Blackman is found to be liable, the liability if any, is secondary, vicarious and purely technical, while the sole and primary liability rests with Defendants Grove Street Realty Urban Renewal, LLC,  Rivercove Development LLC, Painting By Pearce, Inc., EJT Custom Xteriors, LLC, R. Deacon & Sons, Inc., Carpenter Contracting Associates, LLC, Burns & Associates, Inc., and LaRosa Building Contractors, LLC, and ABC Corp. (1-X) said names being fictitious entities).

> 61. Accordingly, Blackman is entitled to common law and/or contractual indemnification from the Defendants Grove Street Realty Urban Renewal, LLC, Rivercove Development LLC, Painting By Pearce, Inc., EJT Custom Xteriors, LLC, R. Deacon  & Sons, Inc., Carpenter Contracting Associates, LLC, Burns & Associates, Inc., and LaRosa Building Contractors, LLC, and ABC Corp. (1-X) said names being fictitious entities).

(Compl. at 10-12.)

A survey of the caselaw shows that the great majority of motions to remand are granted despite the removing party's invocation of the fraudulent joinder doctrine.  This statistic

12

makes sense when considering the high double-burden the removing defendant faces. The present case, however, falls into the minority of cases that have found that improperly joined defendants do not defeat subject matter jurisdiction.

The only issue in Blackman's first count is whether GEBFS/Riverwinds' demand for arbitration under the contract should be dismissed. That count seek no other relief than such a declaration. If the result is that any disputes arising under their contract must be arbitrated, then Blackman's first count is resolved. If the result is that some or none of the disputes arising under their contract do not have to arbitrated, then Blackman's first count is resolved. Either way that Blackman's request to dismiss GEBFS/Riverwinds' demand for arbitration is decided, that claim is extinguished.

What is left of Blackman's case after the resolution of the first count are the claims Blackman has for indemnification and contribution against Grove Street and the subcontractors. These claims, however, present a completely separate set of legal and factual issues that will not even be ripe if and until Blackman's primary liabilities are established. See Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 966 A.2d 1102, 1107 (N.J. Super. Ct. App. Div.), aff'd, 988 A.2d 90 (N.J. 2009) (citations omitted) (explaining that a cause of action for

13

common law indemnification accrues at the time judgment is rendered against the indemnitee for the underlying claim, and that a cause of action for contribution under the New Jersey Joint Tortfeasors Act, N.J.S.A. 2A:53A-1, et seq., accrues when judgment is recovered against the defendant); see also Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 648 (3d Cir. 1990) (explaining the doctrine of ripeness in the context of a declaratory judgment that the defendants are liable to Step-Saver if certain collateral actions filed by Step-Saver's customers establish defects in the products sold by defendants to Step-Saver, and finding it significant that "Step-Saver has not, in its declaratory judgment action, asked this court to find defendants liable for the damages for breach.  Rather, Step-Saver has only asked us to declare defendants liable if another court finds defect.  But, defendants have not, to this date, in this action, denied liability for damages for breach. . . .  [U]ntil the defendants deny liability on the breach damages, we have nothing to adjudicate").

This procedural posture supports that there is "no reasonable basis in fact or colorable ground supporting" the indemnification and contribution claims against the other defendants at this time because there is no possibility that a state court would find that Blackman's inchoate indemnification

14

and contribution claims are currently judiciable.

An analogy using the subject matter of the parties' dispute – a four-story apartment building - is useful to explain why. Blackman's position is as if its request to dismiss the arbitration demand resides in the same apartment as its indemnification and contribution claims.  GEBFS/Riverwinds' position is as if Blackman's request to dismiss the arbitration demand resides in one apartment while Blackman's indemnification and contribution claims will reside in a different apartment in a new wing, if such a wing is ever constructed.  Even assuming every allegation in Blackman's complaint to be true, and despite the fact that all the claims relate to same building, Blackman's indemnification and contribution claims against the non-diverse defendants are akin to the yet-to-be-constructed, and may never be constructed, wing of the existing building.

Thus, fraudulent joinder is the appropriate legal principle to apply in this situation.[4]  Through this analysis, the Court

---

[4] The use of term "fraudulent" in the joinder context is usually a misnomer in that it implies that a party has committed fraud. The term "fraudulent joinder" does not "require a showing of fraud in the conventional sense; it in no way reflects on the integrity of plaintiff or of plaintiff's counsel." Am. Dredging Co. v. Atl. Sea Con, Ltd., 637 F. Supp. 179, 183 (D.N.J. 1986) (citation omitted) ("The standard for determining whether the joinder is fraudulent has been articulated by Professor Moore in the following manner: The joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident

finds that Grove Street and the subcontractor defendants have not been properly joined to the action. Accordingly, when considering only the citizenship of the properly joined defendants - GEBFS/Riverwinds – and the citizenship of Blackman,

---

defendant, and the failure is obvious according to the settled rules of the state. If, however, there is a real possibility that the plaintiff has stated a cause of action, the joinder is not fraudulent, and the cause should be remanded."). GEBFS/Riverwinds argues, however, that Blackman and its counsel have indeed acted fraudulently in the conventional sense because Blackman initially asserted the dismissal of the demand for arbitration claim against GEBFS/Riverwinds as a single count solely against GEBFS/Riverwinds, but then voluntarily dismissed that action when it was removed to federal court, only to refile the exact claim a second time while adding non-diverse defendants. Although such actions, if true, could possibly implicate state and federal civil procedure rules, see, e.g., N.J. Ct. R. 1:48 and Fed. R. Civ. P. 11, the Court's focus in considering a fraudulent joinder argument is on the effect of the joinder rather than on the intent of the joinder. A plaintiff or its attorney could have pure intentions in joining a non-diverse party to the case, but that joinder may still be deemed "fraudulent." Conversely, a plaintiff or its attorney might intentionally assert a claim against a non-diverse party to defeat removal, but that action may still constitute a proper joinder if the claim against that non-diverse party presents a colorable claim. In performing the fraudulent joinder analysis under the circumstances presented here, the Court cannot consider actions extraneous to the face of the complaint to suggest the possible intent of the joinder. See Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992) ("In evaluating the alleged fraud, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed."); Boyer v. Snap-on Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990) (stating that some piercing is appropriate to only to decide whether plaintiffs have asserted a "colorable" ground supporting the claim against the joined defendant).

16

complete diversity of citizenship exists for removal pursuant to 28 U.S.C. § 1441(b)(2), with subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).

Now that subject matter jurisdiction over Blackman's complaint has been established, the Court is permitted to assess the merits of the complaint, which is challenged by GEBFS/Riverwinds in its currently pending motions to dismiss or sever.  See Boyer v. Snap-on Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990) (citing Chesapeake & Ohio Ry. v. Cockrell, 232 U.S. 146 (1914)) (directing that when considering a fraudulent joinder argument, a district court may not "step[] from the threshold jurisdictional issue into a decision on the merits" until jurisdiction is established).  GEBFS/Riverwinds argues in its motions that the Federal Arbitration Act compels the arbitration of GEBFS/Riverwinds' claims against Blackman, and therefore Blackman's complaint must be dismissed.  In the alternative, GEBFS/Riverwinds argues that, at a minimum, Blackman's indemnification and contribution claims should be severed from the action.

As noted above, the Court granted Blackman's request to refrain from filing its opposition to GEBFS/Riverwinds' motions to dismiss or sever until after the Court resolved Blackman's motion to remand.  In accordance with the Court's prior Orders

17

(Docket No. 25, 31), Blackman shall have fourteen days to file its opposition, and GEBFS/Riverwinds shall have seven days thereafter to file a reply. Even though the fraudulent joinder analysis is a different and less exacting standard than the analysis performed on a complaint when considering a motion to dismiss pursuant to Federal Civil Procedure Rule 12(b)(6), see Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992) ("[T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder."), the Court has already opined on the viability of Blackman's indemnification and contribution claims. In preparing their arguments relating to the motions to dismiss and sever, the parties should be mindful of the Court's observations in this Opinion.

## CONCLUSION

For the reasons expressed above, plaintiff's motion to remand the matter to state court must be denied. An appropriate Order will be entered.


Date: __April 28, 2016__          ___s/ Noel L. Hillman___
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.