```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

```
BLACKMAN & CO., INC.,              Civil No. 15-7274 (NLH/JS)

        Plaintiff,
                                   OPINION
     v.

GE BUSINESS FINANCIAL
SERVICES, INC. and
RIVERWINDS URBAN RENEWAL,
LLC., et al.,

        Defendants.
```

**APPEARANCES:**

MARC SHORTINO
GARTNER + BLOOM, P.C.
675 MORRIS AVENUE
SPRINGFIELD, NEW JERSEY 07078

JONATHAN A. CASS
EDWARD SEGLIAS
MATTHEW GIOFFRE
COHEN SEGLIAS PALLAS
GREENHALL & FURMAN PC
30 S. 17TH STREET, 19TH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
     On behalf of plaintiff Blackman & Co., Inc.

MICHAEL C. FALK
ROBERT E. WARRING
REED SMITH LLP
PRINCETON FORRESTAL VILLAGE
136 MAIN STREET, SUITE 250
PRINCETON, NEW JERSEY 08540

SAMUEL J. PARK
REED SMITH LLP
355 SOUTH GRAND AVENUE, SUITE 2900
LOS ANGELES, CA 90071
     On behalf of defendants GE Business Financial Services,

Inc. and Riverwinds Urban Renewal, LLC

**HILLMAN**, District Judge

**I.   Introduction**

Plaintiff, Blackman & Co., Inc., filed the present action, which defendants, GE Business Financial Services, Inc. and Riverwinds Urban Renewal, LLC ("GEBFS/Riverwinds"), removed from New Jersey state court to this Court.[1] Blackman seeks the dismissal of GEBFS/Riverwinds' demand for arbitration with the American Arbitration Association against Blackman regarding alleged construction defects in an age-restricted building project.

GEBFS/Riverwinds have moved to dismiss Blackman's complaint,[2] arguing that the operative contract is crystal clear that the parties' dispute must be resolved through arbitration. Blackman, by way of a cross-motion in support of its demand to dismiss the matter from arbitration, makes several arguments for

---

[1] Blackman moved to remand the matter to state court.  The Court denied Blackman's motion.  (See Docket Nos. 33, 34.)

[2] In addition to their motion to dismiss, GEBFS/Riverwinds have moved to sever Blackman's claims against the subcontractors. GEBFS/Riverwinds filed that motion in the event that the Court did not deny Blackman's motion to remand.  (See Docket No. 19.) Because the Court denied Blackman's motion to remand because Blackman's claims against the subcontractors were fraudulently joined, GEBFS/Riverwinds' motion to dismiss or sever on that basis is moot.

2

why defendants' claims against it should not be resolved through arbitration.  Blackman's primary arguments are that it did not knowingly and intentionally waive its right to judicial resolution of post-construction disputes, and that the arbitration provisions in the contract pertain only to disputes that arose during construction.

For the reasons set forth below, the Court will deny GEBFS/Riverwinds' motion to dismiss Blackman's complaint and convert Blackman's motion, pursuant to Federal Civil Procedure Rule 56(f)(3), to one for summary judgment.

   **II. Background**

In denying Blackman's motion to remand, the Court set forth the procedural history of the construction project and the events leading up to GEBFS/Riverwinds' demand for arbitration, which the Court will incorporate by reference.  Briefly, the facts relevant to whether the dispute between GEBFS/Riverwinds and Blackman must be arbitrated, as set forth by Blackman in its complaint, are as follows.

Grove Street Realty Urban Renewal, LLC ("Grove Street") was the Owner and General Contractor of a construction project known as Riverwinds Cove Apartments, located at 370 Grove Street, West Deptford, New Jersey.  A four-story building comprised of age-restricted housing was to be constructed on the property.  Grove

3

Street financed the project through a construction mortgage with Merrill Lynch in the total loan amount of $32,258,529.  Merrill Lynch required a Payment and Performance bond in the principal amount ($23,605,681) covering the cost of the building construction only, with the primary beneficiary being the owner, Grove Street.

Because of certain bonding requirements, it was necessary that Grove Street retain Blackman to obtain the bonding for the project, which was to be paid by Grove Street.  Incorporated within the Blackman Contract were General Conditions form A201-1997, including sections relating to dispute resolutions. Blackman then subcontracted the entire general contract back to Grove Street by way of a contract dated October 11, 2007, through the newly created single purpose entity, Rivercove.  As a result, Rivercove became the general contractor for the project.  By way of contract dated October 11, 2007, Rivercove then retained Blackman to handle the construction administration. Rivercove retained all of the subcontractors who performed construction work on the project.  Blackman did not retain any subcontractors.

On or about October 16, 2007, Grove Street executed an "Assignment of Project Documents" to Merrill Lynch as a security interest on the construction loan.  In 2008, Merrill Lynch

4

Business Financial Services changed its name to GE Business Financial. Grove Street defaulted on the construction loan, and GEBFS instituted foreclosure proceedings against Grove Street and the property.

Prior to the Sheriff's sale on the property, GEBFS set up a single asset entity to acquire the property - defendant, Riverwinds - and assigned both the mortgage and judgment to Riverwinds on March 5, 2012. At the Sheriff Sale, which took place on March 20, 2012, Riverwinds bid on the property to protect its foreclosure judgment amount, and acquired the property.

As a result of the various assignments of the construction documents, on or about May 29, 2015, GEBFS/Riverwinds filed a $4,000,000 Demand for Arbitration with the American Arbitration Association ("AAA") against Blackman for alleged post-construction defects, including problems with balconies, window flashings, sheeting, vinyl siding, stucco, and stone. GEBFS/Riverwinds asserted claims against Blackman for breach of contract, breach of implied warranty, and impairment of the security. Blackman & Co., Inc., filed the present action in New Jersey state court in response to the GEBFS/Riverwinds Demand for Arbitration before the AAA seeking a judgment that the dispute was not governed by any agreements to arbitrate.

5

### III. Subject matter jurisdiction

GEBFS/Riverwinds removed Blackman's complaint from New Jersey Superior Court to this Court pursuant to 28 U.S.C. § 1441(a) on the basis of diversity of citizenship under 28 U.S.C. § 1332(a)(1). Blackman is a New Jersey corporation with its principal place of business in New Jersey. GEBFS is a Delaware corporation with its principal place of business in Illinois. Riverwinds, as a limited liability corporation,[3] is a citizen of the state of its sole member, GEBFS, and it is therefore a citizen of Delaware and Illinois. GEBFS/Riverwinds removed Blackman's action on the premise that the New Jersey citizenship of the other defendants must be disregarded because they were not properly joined. In resolving Blackman's motion to remand, the Court agreed with GEBFS/Riverwinds.

### IV. Discussion

The sole issue to resolve in this case is whether the arbitration provisions in the contract between Blackman and Grove Street, which Grove Street assigned to GEBFS/Riverwinds, should be enforced regarding GEBFS/Riverwinds' claims against Blackman for post-construction defects.

---

[3] In their notice of removal, GEBFS and Riverwinds state that Riverwinds is "limited liability corporation." (Docket No. 1 at 8, ¶ 26.)

The Third Circuit Court of Appeals has set forth the parameters of how a dispute over arbitration should be decided:

> Because "[a]rbitration is a matter of contract between the parties," a judicial mandate to arbitrate must be predicated upon the parties' consent. Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980). The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, et seq., enables the enforcement of a contract to arbitrate, but requires that a court shall be "satisfied that the making of the agreement for arbitration ... is not in issue" before it orders arbitration. Id. § 4. "In the event that the making of the arbitration agreement is in issue, then 'the court shall proceed summarily to the trial' of that issue." Par-Knit Mills, 636 F.2d at 54 (quoting 9 U.S.C. § 4). "[T]he party who is contesting the making of the agreement has the right to have the issue presented to a jury." Id.
>
> . . .
>
> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions."

7

Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771, 776 (3d Cir. 2013) (some internal citations omitted).[4]

The starting point of the Court's analysis of the

---

[4] The procedural posture of this case differs from the one in Guidotti. There, the plaintiffs filed a complaint against defendants, which then filed a motion to compel arbitration of the plaintiffs' claims. The Court found, by applying the Rule 12(b)(6) standard, that it was not clear on the face of the plaintiffs' complaint that the parties' contract compelled arbitration of plaintiffs' claims, and, therefore, after limited discovery, defendants could then move for summary judgment under Rule 56. Here, plaintiff's sole claim in its complaint is for the dismissal of defendants' arbitration demand. Defendants have filed a motion to dismiss plaintiff's complaint, and plaintiff has filed a "cross-motion to dismiss arbitration", the latter an understandable, albeit procedurally defective, motion. Defendants' motion, on the other hand, is procedurally correct but substantively incorrect. That is, it correctly asks the Court to consider the complaint and the documents relied upon in the complaint (i.e. the relevant contract provisions) to determine whether on the face of those documents the parties entered into an agreement to arbitrate their extant dispute. As explained more fully below, however, defendants' motion is substantively incorrect as the Court reaches a construction of the agreement directly at odds with their interpretation. It does not follow, of course, that Plaintiff's oddly described motion is a cross-motion since 12(b)(6) does not govern Plaintiff's motion. Nor is Fed.R.Civ. 12(c) available because defendants have not filed an answer to "close" the pleadings. See Fed. R. Civ. P. 12(c) ("After the pleadings are closed . . . a party may move for judgment on the pleadings."). What Plaintiff really seeks through its cross-motion is a judgment that the parties did not agree to arbitrate their current disputes, the very relief sought in the complaint. Stated differently, what Plaintiff wants is summary judgment which must be done on notice. Accordingly, the Court will exercise its discretion under Fed. R. Civ. P. 56(f)(3) and join the issue for resolution in light of its ruling on Defendants' motion and under that standard.

8

arbitrability of GEBFS/Riverwinds' claims, therefore, is the language of the contract between Blackman and Grove Street. (See Docket No. 40-1.)  Section 4.3 governs claims and disputes. A "Claim" is defined as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract.  The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. . . . ."[5] (Docket No. 40-1 at 42.)  A claim must be "initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.  Claims must be initiated by written notice to the Architect and the other party."  (Id.)

Section 4.4 concerns the resolution of claims and disputes. "Claims, including those alleging an error or omission by the

---

[5] Blackman contends that its contract with Grove Street was not assignable to GEBFS or Riverwinds, a position that GEBFS/ Riverwinds disputes. Because the Court finds that GEBFS/Riverwinds' demand for arbitration is not supported under the contract, the Court does not need to address the issue of whether GEBFS or Riverwinds are proper assignees of the contract and have standing to bring post-construction defect claims against Blackman.

9

Architect but excluding those arising under Sections 10.3 through 10.5 [hazardous materials], shall be referred initially to the Architect for decision.  An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect.  The Architect will not decide disputes between the Contractor and persons or entities other than the Owner." (Id. at 43.)  Sections 4.4.2 through 4.4.5 explain the procedure of how the architect considers a claim.  (Id. at 43.)  The architect will issue a written decision, "which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both.  The approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration." (Id.)  Section 4.4.6 concludes,

> When a written decision of the Architect states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor.  If the Architect renders a decision after

10

>arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

(Id. at 44.)

Section 4.5 governs mediation and section 4.6 governs arbitration. Section 4.5.1 provides, "Any Claim arising out of or related to the Contract, . . . shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party." (Id. at 44.) The arbitration provisions provide,

> § 4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10 [consequential damages], 9.10.4 and 9.10.5 [effect of final payment on waiver of certain claims], shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.
>
> § 4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.
>
> § 4.6.3 A demand for arbitration shall be made within the time limits specified in Sections 4.4.6 and 4.6.1 as

11

applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Section 13.7.

§ 4.6.4 Limitation on Consolidation or Joinder. No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

§ 4.6.5 Claims and Timely Assertion of Claims. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

§ 4.6.6 Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

(Id. at 44-45.)

12

The plain language of the contract provisions stated above, along with the content of multiple other contractual provisions, shows that the dispute resolution procedures, including arbitration, were established to resolve disputes between the owner of the property and the contractor that arose during construction, with the architect being the primary, and preferable, arbiter.

Even though the arbitration provision contained in Section 4.6.1 can be parsed to say, "Any Claim arising out of or related to the Contract . . . shall . . . be subject to arbitration," (see, e.g., Def. Mot. Dismiss Br., Docket No. 5-2 at 30), the key to whether GEBFS/Riverwinds' post-construction claims against Blackman must be arbitrated is the deleted phrase after "shall": "Any Claim arising out of or related to the Contract . . . shall, <u>after decision by the Architect or 30 days after submission of the Claim to the Architect</u>, be subject to arbitration." (Docket No. 40-1 at 44 (emphasis added).)  This requirement that any claim between the property owner and the contractor must first be submitted to the architect prior to arbitration is preceded by the requirement that the owner and contractor resolve a claim through mediation, which undertaking is also preceded by the submission of the claim to the architect

13

to consider it in the first instance.  The contract specifically states, "An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner."  (Id. at 43.)

"[I]t is well understood, as a general matter, that in the typical construction contract and certainly in AIA Document A201, the architect or other designated design professional such as an engineer, has multiple roles. . . . [T]he design professional functions as agent of the owner, as a consultant, and also as an arbiter.  Thus, Article 4 of AIA Document A201 designates the architect, defined as one who is licensed to practice architecture, as the administrator of the contract and as the arbiter of contract disputes." Ingrassia Const. Co. v. Vernon Twp. Bd. of Educ., 784 A.2d 73, 78 (N.J. Super. Ct. App. Div. 2001) (citing Terminal Constr. Corp. v. Bergen County Hackensack River Sanitary Sewer Dist. Auth., 18 N.J. 294, 313, 113 A.2d 787 (1955)).

That the architect serves as the arbiter of contract disputes between the owner and contractor dispels the notion that the arbitration provision applies to post-construction defects discovered years after final completion of the project.  It also supports the conclusion that the arbitration provision only applies to claims that arise during construction.  It would

14

not make any sense for the architect to be designated as the first-line arbiter in the sequential dispute resolution procedures if those procedures applied to post-construction claims.

The overridingly dispositive provision in the contract that supports this conclusion is that an initial decision by the architect is "required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner <u>arising prior to the date final payment is due</u>, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect."  (Docket No. 40-1 at 43 (emphasis added).)  The term "arising prior to the date final payment is due" exemplifies that "claims" do not concern post-completion claims.  (<u>See</u> <u>id.</u> at 50, Section 9.4.2, "The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. . . . The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the

15

amount certified.")  Moreover, any decision by the architect would result, if applicable, in "a change in the Contract Sum or Contract Time or both."  (Id. at 43.)  Those remedies would be moot after construction is completed and paid for.

Additionally, the term "claim," which must be initiated within 21 days of an occurrence or the discovery of the condition, includes disputes and matters between the owner and contractor "arising out of or relating to the Contract," and the "contract" between Grove Street and Blackman is titled and defined as "Contract for Construction." (Id. 40-1 at 25, 33, 42.)  The requirement of timely notice of a dispute to the architect concerning a "contract for construction" further supports that the entire contract, including the dispute resolution procedures, relates to the process of construction, and not occurrences or conditions that are discovered after the process of construction is complete.  Indeed, the entire purpose of the architect serving as the arbiter is to ensure that the construction is completed in a proper and timely manner.

An arbitration agreement is subject to state-law contract principles.[6]  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (explaining that although the FAA expresses a

---

[6] The contract contains a choice-of-law provision which selects New Jersey law to govern.  (Docket No. 40-1 at 59, 63.)

16

national policy favoring arbitration, the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability). An enforceable agreement requires mutual assent - a meeting of the minds based on a common understanding of the contract terms. Morgan v. Sanford Brown Inst., --- A.3d ---, 2016 WL 3248016, at *7 (N.J. June 14, 2016) (citing Atalese v. U.S. Legal Servs. Grp., L.P., 99 A.3d 306, 313 (N.J. 2014), cert. denied, 135 S. Ct. 2804 (2015)). The right to a civil jury trial is guaranteed by the New Jersey Constitution. Id. (citing N.J. Const. art. I, ¶ 9). "[W]hen a contract contains a waiver of rights - whether in an arbitration or other clause - the waiver must be clearly and unmistakably established." Id. (citing Atalese, 99 A.3d at 314); see also Guidotti, 716 F.3d at 773 (quoting Par-Knit Mills, 636 F.2d at 54) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

In this case, the Riverwinds project was governed by a "contract for construction" entered into between the owner of the property and the contractor. The construction contract included specific provisions as to how issues - or claims - that arose during construction were to be resolved. The architect served as the initial decision-maker on claims that arose prior

17

to "final payment" to the contractor.  If his decision was unsatisfactory to the parties, they were to attend mediation in good faith.  If mediation was unsuccessful, the issue could then be submitted to arbitration.  All of these procedures were on the clock:  21 days to submit the claim to the architect, 30 days to mediate, and then 30 days to arbitrate.

Construction under the "contract for construction" began in 2007 and concluded in 2009.  In September 2012, the bank financing the project obtained the property by way of foreclosure and discovered alleged construction defects.  In May 2015, the bank filed a demand for arbitration regarding the alleged construction defects.  The demand for arbitration was based on the arbitration provision in Section 4.6 of the "contract for construction."

Based upon the language of the contract, two things are clear.[7]  First, all of the construction contract's dispute resolution procedures, including arbitration, concern claims related to ongoing construction and were intended to prevent a construction issue from stymying the entire project.  Second,

---

[7] The Court has read and considered all of the arguments advanced by the parties, including the applicability of the FAA, the propriety of the assignment, and whether the parole evidence rule bars certain affidavits.  The Court bases its decision entirely on the face of the contract.

18

the contract language does not clearly and unmistakably establish that Blackman waived its right to a jury trial for claims that were discovered three years after the construction was complete by a bank that obtained the property through foreclosure. These two findings strongly suggest the nonarbitrability of GEBFS/Riverwinds' claims against Blackman.

**V.   Conclusion**

Based on the foregoing, GEBFS/Riverwinds' motion to dismiss Blackman's complaint must be denied. As for Blackman's "cross-motion to dismiss arbitration," as noted above, see infra note 4, because Federal Civil Procedure Rule 12 is inapplicable to their motion,[8] the Court will exercise the discretion set forth in Federal Civil Procedure Rule 56(f)(3), which provides:

> (f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may . . . (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

---

[8] Blackman filed its opposition to GEBFS/Riverwinds' motion to dismiss as both an opposition and cross-motion. In its brief, it cites the Rule 12(b)(6) standard to support the denial of GEBFS/Riverwinds' motion to dismiss because it argues that its complaint satisfies the Twombly/Iqbal standard. That standard, however, does not serve as the basis to assess plaintiff's cross-motion. Indeed, plaintiff is not seeking to have its claim dismissed for failure to state a claim, but rather obtain judgment in its favor on its claim for the dismissal of the GEBFS/Riverwinds-instituted arbitration proceeding. As noted earlier, infra note 4, Federal Civil Procedure Rule 56 is the proper basis for obtaining judgment in these circumstances.

Fed. R. Civ. P. 56(f)(3).

The Court's Opinion has identified the "material facts that may not be genuinely in dispute" – namely, that the arbitration provision in the contract concerns claims related to ongoing construction and that the contract language does not clearly and unmistakably establish that Blackman waived its right to a jury trial. Thus, the Court will afford GEBFS/Riverwinds "a reasonable time to respond" to the Court's findings by directing GEBFS/Riverwinds to file a letter brief, no longer than five pages, within two weeks of the date of this Opinion, setting forth why the Court should not grant summary judgment for Plaintiff.

An appropriate Order will be entered.


Date:   July 7, 2016                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.